UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
ROBERT CAPARANIS,                               :    CASE NO. 1:13-cv-926
                                                :
        Plaintiff,                                :
                                                :
vs.                                             :    ORDER & OPINION
                                                :    [Resolving Doc. Nos. 27, 31, 32]
FORD MOTOR COMPANY, et al.                      :
                                                :
        Defendants.                               :
                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      Defendants Ford Motor Company ("Ford"), Charles Kemplin, and Clyde Hescox move for summary judgment on Plaintiff Robert Caparanis's claims against them.[1] With his complaint, Plaintiff Caparanis says Defendants harassed and discriminated against him on the basis of sex, retaliated against him by firing him, and caused him emotional distress.[2] For the reasons that follow, the Court **GRANTS** in part and **DENIES** in part Defendants' motion for summary judgment.

### I. Factual and Procedural Background

      Caparanis began working in Ford's Ohio Assembly Plant in March 2008.[3] From early summer 2008 through his termination, Caparanis worked on the pedestal production line, along with

---

[1] Doc. 27.
[2] Doc. 1.
[3] Doc. 27-1 at 7.

Case No. 1:13-cv-926
Gwin, J.

fifteen to eighteen co-workers.[4] Defendant Kemplin worked in the area as Group Leader.[5] Defendant Hescox also worked as a Group Leader, but for the invert line (a separate line from Plaintiff's).[6]

### A. Robert Caparanis

Plaintiff Caparanis did not fit with the stereotypical male worker on Ford's Ohio plant assembly line. Unlike other workers, Plaintiff Caparanis did not drink, did not do drugs, or swear around women.[7] Additionally, Plaintiff Caparanis was passionate about golf, a sport Defendant Kemplin repeatedly called a "sissy's game."[8] (Obviously, Kemplin is wrong. Golf requires more strength, coordination, and timing than hunting or fishing.) Caparanis did not engage in activities traditionally considered to be manly like hunting or fishing.[9] Caparanis wore clothes that "look[ed] like what girls would wear."[10]

Plaintiff Caparanis also had habits and attributes not usually found among the male workers of Ford's plant. He had worked in management and took detailed notes on his work.[11] His co-workers told him that they thought this behavior was outside of the norm, saying he "did the queerest things" and asked him why he couldn't "just work and be like normal people."[12] At times,

---

[4] *Id.*; Doc. 31-1 at 9.

[5] Doc. 27-1 at 7. Group Leaders are supposed to "support the team," ensuring quality of the production, enabling the team to work safely, providing the team with appropriate tools, and ensuring that employees' concerns are addressed. *See* Doc. 31-3 at 3.

[6] *Id.*

[7] Doc. 31-1 at 51.

[8] *Id.* at 46-47.

[9] *Id.* at 46, 51.

[10] *Id.* at 52.

[11] Docs. 27-2 at 51; 31-1 at 51.

[12] Doc. 31-1 at 54.

Case No. 1:13-cv-926
Gwin, J.

Caparanis engaged in behaviors that pushed him farther from the male stereotype, like pretending to be pregnant and rocking a fake baby while wearing his work apron.[13]

As the result of an accident, Caparanis suffered a neck and upper back injury.[14] After fall 2009, Caparanis was restricted from work with small parts.[15] Although there was an adjustment period, Ford communicated with Caparanis and made changes to his work process to accommodate his disability.[16] After that time, Caparanis was able to perform his job duties and did not complain to Ford that his work involved tasks beyond his restriction.[17]

**B.     The Alleged Harassment**

From early 2010 through December 2010, Plaintiff Caparanis says he was the victim of sexual harassment at work.[18] He says he endured sexually-charged verbal attacks by Defendants Hescox and Kemplin and by other co-workers.[19]

For example, in February 2010, Defendant Kemplin sent Caparanis two sexual text messages.[20] The first said "Found the candy you like for Valentines. But can't remember if you like white or dark chocolate" and attached a picture of two chocolate cake pops shaped like penises.[21] The second had a graphic depicting Elmer Fudd sodomizing Bugs Bunny.[22]

In March 2010, Defendant Hescox approached Caparanis with a 5-gallon container of

---

[13] Doc. 27-2 at 50-51.
[14] Doc. 1 at 3.
[15] Doc. 27-1 at 7-8.
[16] *Id.*
[17] *Id.*
[18] Doc. 1 at 3-5.
[19] *Id.*
[20] Doc. 31-1 at 90.
[21] *See* Doc. 31-8 at 6-7.
[22] *Id.*

Case No. 1:13-cv-926
Gwin, J.

Vaseline and said "Cappy you need this Vaseline for your ass since you take cock there all the time."[23]

In response to this harassment, Caparanis sought the help of his Group Leader, Defendant Kemplin, by repeatedly turning on his yellow work station light.[24] Defendant Kemplin turned off Caparanis's yellow light without providing help.[25]

The situation between Hescox and Caparanis escalated, culminating in Hescox saying he would beat Caparanis up when they were off their shift and Caparanis telling Hescox to "get the fuck away from [him]."[26] Ford disciplined both Plaintiff Caparanis and Defendant Hescox for their behavior.[27]

In April 2010, Ford employees put grease and dirt on Caparanis's work chair.[28] After Caparanis sat in the mixture and stained his shorts, Defendant Kemplin kept track of votes on the substance's identity with a whiteboard delineating the options of "dirt, grease or cum."[29]

Subsequently, Defendant Hescox walked past Caparanis simulating "sucking a cock."[30] Defendant Hescox also passed Caparanis's work area simulating "screwing somebody."[31]

On May 4, 2010, Defendant Kemplin refused to give Caparanis a bathroom break.[32] The following day, Caparanis discovered he had been moved to the bottom of the go-home list, and

---

[23] Doc. 31-1 at 28-29.
[24] *Id.* at 29.
[25] *Id.*
[26] *Id.* at 33.
[27] *Id.* at 34-35; Doc. 27-4 at 2-3.
[28] Doc. 31-1 at 38.
[29] *Id.* at 39; Doc. 32-2 at 3-4.
[30] Doc. 31-1 at 36.
[31] Doc. 27-2 at 33-34.
[32] *Id.* at 199.

Case No. 1:13-cv-926
Gwin, J.

Defendant Kemplin refused to allow him the option of leaving early.[33]

Then, in fall 2010, Ford employees put a male personal ad,[34] Victoria Secret's[35] catalogues, and other women's clothing magazines at Caparanis's work area.[36] They also painted a nearby wooden box with the words "Capp's Victoria's Secret" and "Night shift slob station."[37]

In November 2010, Plaintiff Caparanis signed himself out due to mental strain.[38] Soon after, Ford disciplined him for poor and careless workmanship.[39]

On November 17, 2010, Caparanis asked Defendant Kemplin for an emergency bathroom break, which Kemplin denied.[40] Consequently, Caparanis urinated in his pants.[41] Defendant Kemplin then told Ford employees that Plaintiff was "like a little baby" and "pissed [his] pants."[42]

Some time after this incident, Caparanis was placed on a no work available list.[43]

**C.  Caparanis Reported The Issues**

Plaintiff Caparanis says that he advised his supervisor about some of the tensions with co-workers.[44] He also spoke to Phil Brisette, Ford's labor relations supervisor, about how his co-

---

[33] Doc. 31-1 at 48-50.

[34] *Id.* at 99.

[35] Victoria's Secret is a clothing company specializing in women's lingerie. *See* www.victoriassecret.com.

[36] Doc. 31-1 at 44.

[37] Doc. 27-2 at 45-46. Though neither party has given a concise explanation for this phrase, Defendants maintain that it has "not one iota of 'sexual innuendo.'" Doc. 32 at 14. The Court notes, however, that the term "slob" is sometimes associated with fellatio. *See, e.g.*, "Slob on my knob," Urban Dictionary, http://www.urbandictionary.com/define.php?term=slob%20on%20my%20knob (defining "slob on my knob" to mean "to give a man oral sex")

[38] Doc. 31-1 at 63.

[39] *Id.*

[40] *Id.* at 55-56.

[41] *Id.*

[42] *Id.*; Doc. 31-4 at 3-5.

[43] Doc. 31-1 at 68.

[44] *Id.* at 32.

Case No. 1:13-cv-926
Gwin, J.

workers treated him. He told Brisette he "want[ed] to know what [he was] supposed to do the next time [he] g[o]t harassed."[45/] He filed a report with labor relations after his co-workers put sexually-explicit materials at his work station.[46/] Plaintiff Caparanis also filed a complaint with labor relations after he believed co-workers had placed something on his work gloves because his eye began to burn.[47/]

In October 2010, Caparanis complained to his supervisor again, saying that he was "scared."[48/] The supervisor told him that it was not his problem.[49/]

On December 15, 2010, Plaintiff Caparanis tried to file another report with labor relations.[50/]

**D.      Caparanis's Termination**

During fall 2010, Ford was considering "all options" regarding Caparanis's employment.[51/] The issue came to a head on December 16, 2010. On that day, Plaintiff's supervisor spoke with him about a missing battery charger. During the exchange, the supervisor apparently noticed Caparanis had a black bag with a bottle full of urine.[52/] Plaintiff Caparanis had carried the urine into the plant because he urinated during his commute and did not want the urine to freeze.[53/] Plaintiff Caparanis set down the bottle in a barrel full of dirty gloves.[54/]

Ford subsequently terminated Plaintiff Caparanis. According to Ford, it fired Capranis for

---

[45/] *Id.* at 34.
[46/] *Id.* at 40-42.
[47/] *Id.* at 41, 44.
[48/] *Id.* at 60.
[49/] *Id.*
[50/] *See id.* at 84.
[51/] Doc. 31-2 at 10, 14.
[52/] Doc. 31-1 at 70-73.
[53/] *Id.* at 70-72.
[54/] *Id.* at 76.

Case No. 1:13-cv-926
Gwin, J.

bringing the bottle filled with urine into the workplace, allowing it to spill over onto the gloves, and for having a company-owned keyboard in his personal locker.[55]

No rule exists against bringing bottles of urine into the Ford plant.[56] Nor are there collective bargaining agreement provisions that provide for termination under such circumstances. Another Ford employee who urinated on company property was suspended, but not terminated.[57]

**E.    Caparanis's Mental Health Treatment**

When Plaintiff Caparanis began to experience this harassment at work, he began weekly treatment sessions with George Steckler, a psychologist.[58] Although Caparanis suffered from depression in the past, Psychologist Steckler found that the "symptoms of anxiety, depression and insomnia experienced by Mr. Caparanis were triggered and exacerbated by the harassment he experienced at Ford from March 2010 until his termination."[59]

**F.    Procedural Background**

On April 24, 2013, Plaintiff Caparanis filed a Complaint against Defendants Ford, Hescox, and Kemplin.[60] The Complaint raised six claims: (1) for sex discrimination/hostile work environment under Title VII;[61] (2) for disability discrimination under the Americans with Disabilities Act; (3) for retaliation based on sex and disability discrimination under state and federal law; (4) for unlawful discrimination under Ohio Revised Code § 4112.99; (5) for failure to provide

---

[55] Doc. 31-2 at 3.
[56] Doc. 31 at 20-21.
[57] Doc. 31-3 at 8.
[58] Doc. 31-9 at 5.
[59] *Id.* at 6.
[60] Doc. 1.
[61] 42 U.S.C. §2000e-2(a).

-7-

Case No. 1:13-cv-926
Gwin, J.

a safe work environment; and (6) for intentional infliction of emotional distress.[62]

Defendants moved for summary judgment on all claims.[63] Plaintiff opposed, and Defendants replied.[64] The motion is now ripe for decision.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is only proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[65] When considering a motion for summary judgment, a court will view the facts and all reasonable inferences from those facts in favor of the non-moving party.[66]

## III. Law and Analysis

**A.    Gender Discrimination Claims**

Defendants say that they are entitled to summary judgment on Caparanis's federal and stat-law gender discrimination claims.[67] They say: (1) Caparanis cannot make out a prima facie case of

---

[62] Doc. 1.

[63] Doc. 27.

[64] Docs. 31; 32.

[65] *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of Plaintiffs' case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale, LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004). In responding to a summary judgment motion, Plaintiffs "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (internal quotation marks omitted). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Martingale*, 361 F.3d at 301 (citation omitted).

[66] *Thomas v. Cohen*, 453 F.3d 657, 600 (6th Cir. 2004).

[67] The Court's analysis of Caparanis's Title VII claims is also applicable to his Ohio state-law claims. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 196 (1981) ("[F]ederal case law interpreting Title VII ... is generally applicable to cases involving alleged violations of [O.]R.C. Chapter 4112.").

-8-

Case No. 1:13-cv-926
Gwin, J.

gender discrimination because he cannot show he is a member of a protected class and that he cannot show a hostile work environment existed based on his sex; and (2) Ford had a legitimate, non-discriminatory reason for Caparanis's termination and says Caparanis cannot show the reason is pretextual.[68]

### 1. Termination and Hostile Work Environment Because of Sex

Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . [his] sex . . . ."[69] Discrimination occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[70]

Plaintiff Caparanis says that Defendants violated state and federal law when they harassed, and ultimately terminated, him on the basis of sex and that "he was discriminated against because he did not conform to (or was perceived to not conform to) the stereotypical expectations and images of masculinity."[71] This is a claim of discrimination and a claim of a hostile work environment because of sex.[72] And, Caparanis offers evidence that he faced harassment, discrimination, and ultimately termination because Defendants perceived him to fail to conform to the male stereotype.

"[A] plaintiff hoping to succeed on a claim of sex stereotyping [must] show that he fails to

---

[68] Doc. 27-1 at 16-20; 32 at 9-16.
[69] 42 U.S.C. § 2000e–2(a).
[70] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted).
[71] Doc. 1 at 7.
[72] *See Smith v. City of Salem, Ohio*, 378 F.3d 566, 574 (6th Cir.2004) ("It follows [from Price Waterhouse ] that employers who discriminate against men because they . . . act femininely are also engaging in sex discrimination, because the discrimination would not occur but for the victim's sex.").

Case No. 1:13-cv-926
Gwin, J.

act and/or identify with his or her gender . . . ." [73] The Sixth Circuit has recognized that this theory of sex stereotyping will succeed "where gender non-conformance is demonstrable through the plaintiff's appearance or behavior."[74] To survive summary judgment then, a plaintiff must present some evidence that "he did not conform to traditional gender stereotypes in any observable way at work."[75]

The Court finds that Caparanis does just that. Caparanis puts forth evidence that could support the conclusion that both his appearance and behavior put him outside of a "manly-man stereotype," [76] the norm in the world of Ford's Ohio assembly plant production line. Caparanis wore clothing described by a colleague as "look[ing] like what girls would wear."[77] Additionally, the record suggests that while dressed in his work apron, Caparanis pretended to be pregnant and to rock a fake baby.[78] Caparanis also says that people in his work environment knew that he liked golf – a sport which Defendant Kemplin considered a "sissy's game;"[79] that he did not like drinking, hunting, or fishing;[80] and that he did not swear in front of women.[81] Caparanis says that his past career in management and his practice of keeping detailed notes about his activities at work also comprised behavior that placed him outside of the expected male norm at Ford's Ohio assembly

---

[73] *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 764 (6th Cir.2006) (internal quotation marks omitted).

[74] *Id.* at 763. A theory of sexual stereotyping can support both a gender discrimination claim and a hostile work environment claim. *See Equal Employment Opportunity Commission v. Boh Bros. Constr. Co., LLC*, 731 F.3d 444, 454 (5th Cir. 2013) (en banc).

[75] *Cf. Vickers v. Fairfield Med. Ctr.*, 453 F.3d at 764 (affirming district court's grant of judgment on the pleadings where plaintiff failed to allege he did not conform to traditional gender stereotypes in an observable way in the workplace).

[76] *Boh Bros.*, 731 F.3d at 459.
[77] Doc. 27-2 at 50.
[78] *Id.* at 50-51.
[79] Doc. 31-1 at 46-47.
[80] *Id.* at 51.
[81] *Id.*

Case No. 1:13-cv-926
Gwin, J.

plant production line.[82]

And, Caparanis puts forth evidence that could support his position that Defendants discriminated against him and harassed him because of his gender non-conformance in a way that created an abusive working environment. He says that Kemplin, Hescox and others at Ford harassed him repeatedly, calling him "queer" and inundating him with sexual comments, gestures, and pranks.[83]

Caparanis says that, throughout this ordeal, Ford disciplined and, eventually, fired him.

Ford maintains that the actions of which Plaintiff Caparanis complains are not sexually based. It says that "the majority" of the behavior Plaintiff suggests constitutes harassment is "indisputably asexual" and "objectively harmless."[84] The Court disagrees.

When determining whether alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment, a court must consider the totality of the circumstances, rather than deciding whether each incident of harassment on its own is sufficient for such a claim.[85]

The Court finds evidence, when taken as a whole, could support a finding that Defendants' actions created a hostile work environment. The vulgar acts mimed toward Plaintiff; the threats made while he faced harassment about needing Vaseline for anal sex; the crude text messages Defendant Kemplin sent; the catalogues of women's clothing and lingerie; and the sexually-explicit wooden box that could be interpreted to suggest Caparanis should give (or gave) fellatio in the area near his workspace all could support the conclusion that – at least from early 2010 until Plaintiff

---

[82] Docs. 27-2 at 51; 31-1 at 51.
[83] Doc. 31 at 14-15.
[84] Doc. 32 at 14-15.
[85] *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

-11-

Case No. 1:13-cv-926
Gwin, J.

Caparanis's termination – there was an environment that was "both objectively and subjectively offensive . . . hostile or abusive."[86/]

Accordingly, there is a "genuine dispute as to [ ] material fact [s],"[87/] and summary judgment is denied on Caparanis's sex-stereotype theory.

### 2. Legitimacy and Pretext

Defendants next argue, based on the *McDonnell Douglas Corp. v. Green* three-step burden-shifting framework, that it terminated Caparanis for a "legitimate, non-discriminatory reason": his bringing a urine-filled bottle into the plant, placing it in a barrel full of work gloves, and Ford's discovery of a company-owned keyboard in Caparanis's personal locker.[88/]

In response, Caparanis argues that these reasons are a pretext for gender discrimination.[89/] Caparanis says that in order to survive summary judgment, a plaintiff need only show that some of the factors the employer articulates are false.[90/] He says he is able to do that.[91/]

The Court agrees.[92/] Caparanis shows evidence that could allow a reasonable juror to conclude that Ford's stated reasons are pretextual. Caparanis says he properly disposed of his urine in bathroom, not the barrel.[93/] One other Ford employee, Joel Propps, testified that the gloves in the barrel supposedly soaked with Caparanis's urine were never tested for urine.[94/] No evidence shows whether the gloves were intended to be recycled or thrown out. The barrel contained other garbage,

---

[86/] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citations omitted).
[87/] Fed. R. Civ. P. 56(a).
[88/] Doc. 27-1 at 14-18.
[89/] Doc. 31 at 19-20.
[90/] *Id.* at 20.
[91/] *Id.*
[92/] *See Asmo v. Keane, Inc.*, 471 F.3d 588, 596 (6th Cir. 2006).
[93/] *See* Doc. 27-2 at 103.
[94/] Doc. 31-2 at 9.

Case No. 1:13-cv-926
Gwin, J.

including food.

Furthermore, Caparanis has evidence that could indicate that the keyboard found in his locker was not actually company-owned. The individuals responsible for Caparanis's termination do not know whether the keyboard had labels or engravings indicating that it belonged to Ford, whether Dell keyboards like the one found in Caparanis's locker might have been the personal property of an employee, or if the keyboard was in working order.[95]

Additionally, "[e]specially relevant to [a showing of pretext] would be evidence that [other] employees [committing the same actions as Caparanis] were nevertheless retained."[96] It is undisputed that there is no rule against disposing of urine in company bathrooms.[97] And, Ford points to no collective bargaining agreements permitting it to terminate Caparanis for the stated reasons. Caparanis also provides some evidence to suggest that another employee who urinated on company property was only suspended and not discharged.[98]

"Other evidence that may be relevant to any showing of pretext includes facts as to [Defendants'] treatment of [Caparanis] during his prior term of employment."[99] And Caparanis's facts indicate he was treated poorly due to his failure to conform to gender norms. Accordingly, there are sufficient facts to support Caparanis's contention that Defendants' proffered legitimate, nondiscriminatory reason for firing him was a pretext for discriminating against him for failure to conform to gender norms. Defendants are not entitled to judgment on Caparanis's gender discrimination claims.

---

[95] *Id.* at 3-4; Doc. 31-5 at 3-4.
[96] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973).
[97] Doc. 31 at 20-21.
[98] Doc. 31-3 at 8.
[99] *McDonnell Douglas*, 411 U.S. at 804.

Case No. 1:13-cv-926
Gwin, J.

### 4. Ford's Liability

Ford says that Caparanis's claims against it fail because Ford is not responsible for harassment by Plaintiff Caparanis's co-workers.[100] This is false.

Though Ford is correct that it is not automatically vicariously liable under Title VII for sexual harassment by Defendants Kemplin and Hescox (since neither of them were supervisors with the ability to take tangible employment actions),[101] that fact is irrelevant here; Ford can still be held liable for a hostile work environment. Where an employer knows or should have known of the harassment in the work place and fails to take appropriate remedial action, the employer is liable for harassment done by co-workers.[102]

Ford disputes receiving notice of at least some of the actions that Plaintiff Caparanis complains about,[103] but Plaintiff has some evidence that he made various reports about his treatment.[104] Additionally, as early as October 7, 2010, Ford knew that Plaintiff Caparanis was "scared" because of his co-workers' actions.[105] Both Plaintiff and Ford's Labor Relations & Hourly Personnel Supervisor, Joel Propps, have testified that Caparanis told his supervisor that his co-

---

[100] *See* Doc. 32 at 16.
Ford makes the same argument with regard to Caparanis's common law sexual harassment claims. *See* Doc. 32 at 23. In particular, Ford says that this claim requires evidence that Ford knew or should have known that its employees– Defendants Kemplin and Hescox – had a past history of sexually harassing behavior. *Id.* Knowledge of a *past history* of sexual harassing behavior, however, is not necessary. Rather, "where an employer know or has reason to know that one of his employees is sexually harassing other employees, he may not sit idly by and do nothing." *Kerans v. Porter Paint Co.*, 61 Ohio St.3d 486, 494 (1991). In this case, as described below, because Plaintiff Caparanis has some evidence to suggest he reported the treatment he received from his co-workers, evidence exists to support the conclusion that Ford was on notice of the behavior.

[101] *See* Doc. 32 at 16 (citing *Vance v. Ball St. Univ.*, 133 S.Ct. 2434 (2013)).

[102] *See Braun v. Ultimate Jetcharters, Inc.*, No. 12-cv-01635, 2013 WL 3873238, at *14 (N.D. Ohio July 25, 2013).

[103] *See* Doc. 32 at 12-13.

[104] *See supra* Part I.C at 5-6.

[105] Doc. 31-2 at 14.

-14-

Case No. 1:13-cv-926
Gwin, J.

workers were subjecting him to sexual innuendo, ridicule, and harassment.[106/] Cumulatively, this evidence could support the conclusion that Ford knew or should have known of the harassment and failed to take appropriate remedial action. Therefore, Ford is not entitled to summary judgment on the claims against it.

**B.      Disability Discrimination Claims**

Defendants argue that they are entitled to summary judgment on Caparanis's disability discrimination claims because Plaintiff Caparanis cannot establish that he was a qualified individual with a disability or that he was terminated because of a disability.[107/]

The Court agrees. To establish a prima facie case of disability discrimination, a plaintiff must demonstrate: (1) he was disabled; (2) he was otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse employment action; (4) the employer knew or had reason to know of his disability; and (5) the position remained open while his employer sought other applicants or he was replaced.[108/]

In his Complaint, Caparanis says that he was disabled with regard to his neck and upper back injuries, that prevented him from working with small parts. He has, however, no record evidence to suggest that the adverse employment actions of which he complains – being disciplined, placed on leave, and ultimately terminated – are in any way linked to his inability to work with small parts.[109/] Though Caparanis appears to have had some issues relating to his need for frequent bathroom breaks, the Complaint raises no claims linking the disability stemming from his neck and

---

[106/] *See, e.g.,* Docs. 27-2 at 66-68, 78; 32-3 at 4.
[107/] Doc. 27-1 at 21-22.
[108/] *White v. Std. Ins. Co.*, 529 Fed. App'x 547, 549 (6th Cir. 2013) (citations omitted).
[109/] *See, e.g.*, Doc. 27-2 at 17-19 (testifying he does not recall being disciplined for not putting in the clips properly and could not remember whether he was disciplined for his work with bolts).

-15-

Case No. 1:13-cv-926
Gwin, J.

back injuries to his bladder.[110] Moreover, as the Court has already described above, evidence about Defendants' treatment of Caparanis prior to his termination suggests discrimination based on his gender non-conformance – not on any physical disability.

In light of the fact that Defendants have "show[n] that there is no genuine dispute as to any material fact," the Court grants summary judgment to Defendants on Caparanis's disability discrimination claims.[111]

**C.   Retaliation Claims**

Defendants say that Caparanis's state and federal law claims for retaliation fail because Caparanis cannot show that his termination was causally connected to his protected activity and that his termination was a pretext for retaliation.[112]

The Court finds that these arguments with regard to Caparanis's retaliation claims fail. First, Caparanis presents evidence that he has engaged in a protected activity: he complained to his supervisors about the harassment he faced. Caparanis says that he: repeatedly signaled to his Group Leader when he was being harassed by Hescox; alerted his supervisor about the tensions with and harassment from his co-workers;[113] spoke to Ford's labor relations supervisor, Phil Brisette, about being the victim of harassment;[114] and signed himself out due to mental strain.[115]

Second, Plaintiff Caparanis says Defendants responded to his activities by retaliating.

---

[110] *See* Doc. 1.
[111] Fed. R. Civ. P. 56(a).
[112] Docs. 27-1 at 22-23; 32 at 19-21.
[113] *See* Doc. 27-2 at 27, 65, 68; *see also* Doc. 31-2 at 14.
[114] Doc. 27-2 at 31-33.
[115] Doc. 31-1 at 63.

-16-

Case No. 1:13-cv-926
Gwin, J.

Caparanis cites that Ford disciplined him;[116] placed him on a no work available list;[117] and, ultimately, fired him.[118]

Evidence could support such a conclusion. An October 2010 email from Joel Propps, Ford's Labor Relations & Hourly Personnel Supervisor, indicates that Ford was considering "all options" with regard to Caparanis.[119] This email was sent in response to one of the times Caparanis complained to a supervisor.[120]

When combined with the *McDonnell Douglas* framework analysis examining the Defendants' treatment of Caparanis before his termination (which the Court has already performed with regard to Caparanis's claim of pretext above), sufficient facts support Caparanis's contention that Defendants' actions were causally connected to his complaints about the harassment Caparanis faced.[121] Defendants are not entitled to judgment on the retaliation claims related to sex discrimination either.

In contrast, for the same reasons that the Court has already found that Plaintiff's disability discrimination claims have no merit, the Court grants summary judgment in favor of the Defendants on the portion of Plaintiff's retaliation claims that are related to disability discrimination.

**D.   Intentional Infliction of Emotional Distress Claim**

Defendants say that Caparanis's claim for intentional infliction of emotional distress fails

---

[116] *See, e.g.,* Docs. 31 at 9-10, 19; 31-1 at 64 (describing being disciplined for "poor and careless workmanship" just half an hour after writing a grievance for being thrown out of the 18th and for no work available and bathrooms" and noting that he was put on medical without a doctor).

[117] Doc. 31 at 10, 19.

[118] *See id.* at 18-19.

[119] Doc. 31-2 at 14.

[120] *Id.*

[121] *See Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008) ("The *McDonnell Douglas* framework governs claims of retaliation based on circumstantial evidence.").

-17-

Case No. 1:13-cv-926
Gwin, J.

because Caparanis has not suffered any debilitating injury as a result of the Defendants' conduct.[122]
This argument loses.

To make out a claim for intentional infliction of emotional distress under Ohio law, a plaintiff must show he sustained serious mental or emotional distress caused by "outrageous and extreme" conduct.[123] "[S]erious emotional distress" is defined as "an emotional injury that is both severe and debilitating to a reasonable person."[124] At summary judgment, "a plaintiff . . . must present some evidence beyond the plaintiff's own testimony that he or she has experienced emotional distress due to the defendant's actions."[125]

Caparanis meets this burden; the record contains some evidence to suggest that Caparanis suffered from serious emotional distress. After Caparanis began to experience harassment at work, he started weekly treatment sessions with George Steckler, a psychologist.[126] Although Caparanis suffered from depression in the past, Psychologist Steckler found that Caparanis's anxiety, depression, and insomnia were "triggered and exacerbated by the harassment he experienced at Ford from March 2010 until his termination."[127] This is enough; a reasonable juror could find that Caparanis suffered from serious emotional distress.

And, the Court finds that a reasonable jury could find Defendants' conduct outrageous and extreme conduct. Plaintiff Caparanis faced repeated harassing behavior from his co-workers, including Defendants Hescox and Kemplin, who had been his Group Leader. Defendants allowed

---

[122] Doc. 27-1 at 23-25.
[123] *Risch v. Friendly's Ice Cream Corp.*, 136 Ohio App.3d 109, 115(Ohio Ct. App. 1999) (citations omitted).
[124] *Id.*(citations and quotation marks omitted).
[125] *Buckman–Peirson v. Brannon*, 159 Ohio App.3d 12, 25(Ohio Ct. App.2004).
[126] Doc. 31-9 at 5.
[127] *Id.* at 6.

Case No. 1:13-cv-926
Gwin, J.

(and in some cases made) Caparanis to be the butt of crass sexual jokes, the victim of horrible pranks, and the recipient of an onslaught of sex-laden innuendo. A reasonable juror could find such behavior constituted egregious conduct "beyond all possible bounds of decency" and "intolerable in a civilized community." [128]

Therefore, Plaintiff has sufficient evidence to survive summary judgment on his intentional infliction of emotional distress claim.

### IV. Conclusion

For the reasons above, the Court **GRANTS** in part and **DENIES** in part Defendants' motion for summary judgment.

IT IS SO ORDERED.

Dated: December 16, 2013          s/        *James S. Gwin*
                                  JAMES S. GWIN
                                  UNITED STATES DISTRICT JUDGE

---

[128] *See Kovac v. Sup. Dairy*, 930 F. Supp. 2d 857, 870 (N.D. Ohio 2013) (citations omitted).